Filed 2/4/16  In re A.C. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re A.C. et al., Persons Coming Under the Juvenile Court Law. | C078849 |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>K.J.,<br><br>Defendant and Appellant. | (Super. Ct. No. JD232801, JD232802, JD232807) |

K. J., mother of the minors, appeals from orders of the juvenile court denying her petitions for modification and her request for a bonding study.  (Welf. & Inst. Code, §§ 388, 395.) [1]  Mother contends the court erred in denying her petitions for modification without a hearing and abused its discretion in denying her request for a bonding study. We affirm.

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

1

# I. BACKGROUND

The original petition was filed in March 2012 in Placer County alleging the minors, Angelina C., age 21 months, and Gabriel C., age 5, were at risk due to domestic violence and drug use by the parents.  An amended petition added newborn Ava C. to the dependency in April 2012.  The minors were under supervision in the parent's care on the condition the parents did not live together.  Within two months a supplemental petition (§ 387) was filed based on mother's neglect of the minors and marijuana use.  In September 2012, the minors were placed with father and mother had supervised visitation.  Less than a month later, a second supplemental petition was filed due to father's inability to protect the minors from mother.  The minors were detained in October 2012 and placed in foster care.  At the October 2012 jurisdiction hearing, the case was transferred from Placer County to Sacramento County for disposition based on fathers address.

The transfer-in report stated the parents were living together with the paternal grandparents.  Father told the social worker mother had a gambling problem and admitted the couple had a history of domestic violence.  The foster parent said the minors initially lacked structure but were responding well to rules.  The report stated the parents had domestic violence, anger management, and substance abuse issues.  The social worker described the parents' prior participation in services as inconsistent and assessed their benefit from services was only fair.  The court ordered reunification services and set a review hearing.

The six-month review report filed in May 2013, recommended further services.  Both parents had completed a non-court ordered parenting class and were referred to court-approved parenting providers.  Mother delayed re-engaging in parenting education.  Both parents were participating in other services including drug testing, therapy and domestic violence classes.  Both parents attended supervised visits but showed limited ability to cope with Gabriel's emotional swings and Angelina's limit testing.  Mother's

gambling continued to cause problems in the parents' relationship and she had started to attend Gamblers Anonymous because father had an issue with her gambling. At the six-month review hearing, the court ordered further services.

The 12-month review report, filed in November 2013, again recommended further services for the parents. Mother had given birth to her fourth child, who was not detained. Gabriel was in therapy to address exposure to domestic violence. The parents had made significant progress in services, completing most elements; although parenting remained an issue. Mother completed a Gamblers Anonymous recovery program and, despite one relapse, had appeared highly motivated. Father was taking further parenting instruction and was struggling to apply what he learned in the domestic violence class. Visits had progressed to being split between unsupervised and monitored, but were returned to supervised when father hit Gabriel with a toy and then called him a "cry baby." Generally, visits went well but issues with the minors persisted. The foster mother reported that all three minors reacted with increased behavioral problems following visits. The court ordered further services and set an 18-month review hearing for April 2014.

An interim report in January 2014 stated that, beginning in November 2013, the minors had overnight visits with the parents twice a week and mother was often gone gambling. Gabriel reported that there was no physical violence, but that he heard the parents argue over money. Mother denied she was gone frequently, but said during one overnight visit she did go gambling after the minors were in bed. The foster mother reported that Angelina begged not to go to the visits and that it took up to 24 hours for the minors to return to normal behavior after the visits. The girls' daycare provider and Gabriel's therapist both reported increased behavioral issues after visits, particularly after mother relapsed and started gambling again. The report concluded that, in the remaining reunification period, the parents needed to demonstrate a healthy relationship that was

drug free, adequate parenting, participation in individual counseling, and positive interaction with the minors during visits.

The March 2014 report for the 18-month review hearing recommended continued services. Mother had moved out of the home and continued to deny she had a gambling issue, explaining that father did not want her to go to the casino at all and they argued when she did. The parents said that in February 2014, mother went to the casino to relieve her stress and father was disappointed. Father said she spent the rent money on gambling and tried to use the food stamps to gamble. In March 2014, mother and the paternal grandmother got into a "little scuffle" over fears mother was going to use the benefits card to gamble. Mother said her counselor told her she was behaving compulsively and did not understand the father's and paternal grandparents' skepticism about her behavior. Mother said she now realized her gambling resulted in breaking trust with father and she needed to work on herself before she could return to living with him. There was a report of a domestic violence incident in December 2013 in the presence of Gabriel—Angelina and Ava were asleep in another room—triggered by mother asking father for money so she could go gambling. When the social worker investigated, the parents minimized the incident. Gabriel told the social worker "he goes to his room to play X-Box to drown out the [] arguing." The parents were both in court-ordered therapy. Mother was addressing her gambling, inter alia, and was somewhat resistant to treatment. Father was to address, inter alia, conflict resolution and co-dependency. The parents continued to have visits, some of which were observed and some unsupervised. The court set a contested permanency review hearing for July 2014.

An addendum report in July 2014 recommended termination of services. The report reviewed the history of mother's gambling and noted that, while she participated in Gamblers Anonymous, she continued to gamble. The minors were all negatively affected by unsupervised contact with the parents. Mother admitted her gambling was a problem in March 2014 and re-engaged in Gamblers Anonymous. By June 2014, both parents

4

were attending Gamblers Anonymous and mother reported she was three months clean. They reported there had been no domestic violence in several months. The social worker found the parents' progress in reunification was only fair due to mother's gambling issues and father's inability to be a primary caretaker for the minors.

A second addendum in August 2014 stated mother had completed her therapy sessions but told her therapist she had not attended Gamblers Anonymous on a regular basis, or created a support system within the program.

At the contested review hearing in September and October of 2014, the court heard testimony from mother and father. After hearing argument, the court terminated services and set a section 366.26 hearing. In its ruling, the court reviewed the history of the case noting the parents' issues with substance abuse and domestic violence, but identified the central problem as mother's gambling addiction, which she had yet to address. The court recognized that mother had acknowledged she had a problem but minimized it, in a repetitive pattern, over the 18 months of reunification. The court discussed the chronology of mother's gambling, which began in her teens. Mother had testified her longest period free from gambling was nine months. Mother claimed she had not gambled since March 2014, a period of seven months. The court then discussed mother's progress in services, finding she got little benefit from the Gamblers Anonymous program completed in August 2013, and that in January 2014 she denied having a gambling problem. Mother also denied she got into a fight with the paternal grandmother in March 2014 when trying to get money to gamble. Mother completed a second round of treatment for gambling in June 2014; however, the therapist's report diagnosed her as a pathological gambler and indicated she had made some changes but had not attended Gamblers Anonymous on a regular basis. Mother testified she did not have a sponsor, rarely attended meetings and did not participate when she did attend. The court doubted the excuses she offered for failing to attend and concluded she had opted out of recovery. With mother's nine-year history of gambling, the harm that

activity had caused the family, including domestic violence, financial issues, and neglect of the minors, and father's inability to parent, the court found the minors could not be returned and reunification services were terminated. The section 366.26 hearing was scheduled for February 2015.

In January 2015, mother filed petitions for modification seeking return of the minors under a plan of family maintenance. (§ 388.) She alleged as changed circumstances that she had not gambled for a year, was actively and regularly participating in Gamblers Anonymous meetings, had a sponsor, and had committed herself to a lifetime ban from casinos. Mother further alleged she had been responsible with money and had a strong support system. Mother also alleged that she and father were safely raising their fourth child, which demonstrated there was no risk in returning the minors home. Mother alleged the modification was in the best interests of the minors because she had consistently visited them, participated in joint therapy with Gabriel, had a strong relationship with the minors, and the minors were bonded to their sibling. Mother attached supporting documents, including copies of Gamblers Anonymous meeting attendance sheets showing attendance from April through June of 2014, resuming in October 2014, and continuing through December 2014. The court set a hearing date on the petitions. The Department filed a response to the petitions contending mother had alleged only changing circumstances and that the proposed modification was not in the minors' best interests.

The January 2015 report for the February section 366.26 hearing noted mother's pending petitions for modification. The report stated that, when the case was transferred to adoptions, visitation was decreased to once a month and again was supervised. The parents missed the December visit, but brought gifts to the January visit and were appropriate during the visit. Although Gabriel had a brief meltdown on the way home, all three minors quickly resumed normal activities when they arrived home and were happy to see the foster mother.

6

In February 2015, mother filed a request for a bonding assessment to evaluate the parent-child bond to assist her in defending against termination of her parental rights.

Both the petitions and the request were addressed in a March 2015 hearing. Neither parent was present. The court heard argument on whether mother's petitions for modification stated a prima facie case. The court said it had reviewed the transcript of the 18-month review hearing, the prior reports including the report for the section 366.26 hearing, and the response to the petitions and concluded mother had not shown changed circumstances. The court found mother was trying to address her issues but had a pattern of repeatedly addressing her issues and relapsing. Further, there were ongoing questions of domestic violence. The court concluded mother's circumstances may be changing but had not changed enough and denied the petitions without an evidentiary hearing. As to the bonding study, after hearing argument, the court was of the opinion that a bonding study would not assist the court in any way and denied mother's request.

## II. DISCUSSION

*A. Petitions for Modification*

Mother argues the juvenile court abused its discretion in denying her petitions for modification without a hearing because the pleadings established a prima facie case for the relief she sought.

A parent may bring a petition for modification of any order of the juvenile court pursuant to section 388 based on new evidence or a showing of changed circumstances.[2] "The parent requesting the change of order has the burden of establishing that the change

---

[2] Section 388, subdivision (a)(1), provides, in part: "Any parent . . . may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court . . . for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court." The court must set a hearing if "it appears that the best interests of the child . . . may be promoted by the proposed change of order." (§ 388, subd. (d).)

is justified.  [Citation.]  The standard of proof is preponderance of the evidence.  [Citation.]"  (*In re Michael B.* (1992) 8 Cal.App.4th 1698, 1703.)  Determination of a petition to modify is committed to the sound discretion of the juvenile court and, absent a showing of a clear abuse of discretion, the decision of the juvenile court must be upheld.  (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319 (*Stephanie M.*); *In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.)

To establish the right to an evidentiary hearing, the petition must include facts which make a prima facie showing that there is a change in circumstances and "the best interests of the child may be promoted by the proposed change in order."  (*In re Daijah T.* (2000) 83 Cal.App.4th 666, 672-673; see also *In re Zachary G.* (1999) 77 Cal.App.4th 799, 806; *In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1414; Cal. Rules of Court, rule 5.570(e)(1).)  "In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case."  (*In re Jackson W.* (2010) 184 Cal.App.4th 247, 258.)

Mother's petitions alleged she had addressed the issues identified by the court at the 18-month review hearing and was ready for return of the minors under court supervision.  Mother alleged that, since the court terminated reunification services in October 2014, she had actively engaged in Gamblers Anonymous, had a sponsor, participated in meetings, had almost a year clean, and had self-imposed a lifetime ban from casinos.

When viewed alongside the record that supported the juvenile court's orders, the allegations in Mother's petitions did not make a prima facie showing there was a change in circumstance.  Mother's history with Gamblers Anonymous was one of attending only when pressured, both in 2013 and 2014; indifferent benefit from the program marked by relapses, which led to domestic violence as she tried to get money to gamble from family sources; leaving the minors with father, who was unable to parent them; and constant minimization of the central issue of gambling as well as the related issues of domestic

8

violence and lack of adequate parenting and protection of the minors.  The evidence supporting mother's own petitions shows a gap in attending Gamblers Anonymous meetings for months prior to the 18-month review hearing.  Mother testified about her lack of participation and offered dubious excuses for her failures.  Her therapist reported she had only made some progress and that her gambling was pathological.  Mother had evidently managed to remain clean during the seven months from March to October 2014 without a support system or addressing the gambling issue in a meaningful way.  This was short-term success and she was, given her history, likely to relapse.  During the period from October 2014 to the hearing on her petitions in March 2015, she did seriously engage the Gamblers Anonymous program and began to develop the type of support system she would need for a lifetime of living gambling free.  However, by the time of the hearing she had only five months of serious and committed participation in a program which could give her the necessary foundation to remain free from gambling.  Given her nine-year gambling history and the severity of the problem she was addressing, the court could not reasonably find that circumstances were changed, it could only find that they were changing.  Further, mother's petitions do not address the related issues of domestic violence or failure to protect the minors.  No abuse of discretion appears.

B.  *Request for Bonding Study*

Mother also argues the juvenile court's denial of her requests for a bonding study was an abuse of discretion.

A bonding study, whether inter-sibling or parent-child, is not required prior to termination of parental rights.  (*In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1339; *In re Richard C*. (1998) 68 Cal.App.4th 1191, 1195.)  The court does have discretion to order a bonding study, even late in the process.  (*Id.* at p. 1197.)  However, absent a showing of clear abuse, the exercise of the court's discretion will not be overturned.  (*Stephanie M*., *supra*, 7 Cal.4th at pp. 318-319; *In re Lorenzo C., supra*, 54 Cal.App.4th at p. 1341.)  A bonding study is, of course, an expert opinion on the relationship between the parent and

9

child.  The juvenile court is never required to appoint an expert when making a factual determination unless "it appears to the court . . . that expert evidence is . . . required." (Evid. Code, § 730.)  Thus, when there is ample evidence in the record of the relationship between parent and child, a bonding study is unnecessary.

The record is clear that Ava, the youngest child, had little relationship with either parent since she was taken into custody at three months of age, her only contact with them was during visits, and the foster mother was her primary caretaker.  Angelina was two years old when removed from parental custody and had some relationship with the parents which declined over time as she responded to the day to day structure of the foster placement and ultimately begged not to be made to go to visits.  Gabriel, as the oldest, had the strongest relationship to the parents and wanted to maintain contact with them.  However, all three minors were negatively affected by unsupervised contact with the parents.  From these facts, the court had adequate information to assess the parent-child relationship of each of the minors.  Consequently, the court concluded a bonding assessment would not be of assistance.  The juvenile court did not abuse its discretion in denying mother's request for a bonding study.

## III.  DISPOSITION

The orders of the juvenile court are affirmed.

/S/

RENNER, J.

We concur:

/S/

BUTZ, Acting P. J.

/S/

MAURO, J.